**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **DANIEL JONES, ET AL.,** | ) | CASE NO. 1:18-cv-00011 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | |
| | ) | |
| **THE LUBRIZOL CORPORATION** | ) | <u>ORDER</u> |
| | ) | |
| Defendant. | ) | |

<u>**CHRISTOPHER A. BOYKO, J:**</u>

This matter comes before the Court upon the Motion (ECF DKT # 13) of Plaintiff, Daniel Jones, individually and as a representative of all similarly situated employees of Defendant, The Lubrizol Corporation ("Lubrizol"), for Conditional Certification under Section 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), Expedited Opt-In Discovery and Court-Supervised Notice to Potential Opt-In Plaintiffs.  For the following reasons, Plaintiff's Motion is GRANTED, in part.

<u>**FACTUAL AND PROCEDURAL HISTORY**</u>

Plaintiff Daniel Jones filed his Complaint on behalf of himself and all others similarly situated on January 2, 2018, against Defendant The Lubrizol Corporation, alleging violations of

the FLSA, as well as violations of Ohio's counterpart codified in R.C. § 4111.03 et seq.  On March 1, 2018, Plaintiff filed a Motion for Conditional Certification, Expedited Opt-In Discovery, and Court-Supervised Notice to Potential Opt-In Plaintiffs.

Defendant employs manufacturing employees throughout multiple facilities within the United States.  Plaintiff alleges that he worked as a manufacturing employee (a material handler) for Defendant between April 11, 2017 and November 9, 2017[1] at the facility in Painesville, Ohio.  Defendant classified Plaintiff and other manufacturing employees as non-exempt, and paid these employees an hourly wage.

Plaintiff alleges that Defendant failed to pay him and others similarly situated for all working time.  Specifically, Plaintiff claims Defendant failed to pay employees for time spent (a) changing into and out of their uniforms and protective equipment; (b) walking to and from their assigned work areas; and (c) retrieving necessary tools and equipment for their work.

Defendant alleges Plaintiff is not similarly situated to other employees.  According to Defendant, certain individuals that have filed consents to join this lawsuit are either (a) part of a union, and their claims are governed by the Labor Management Relations Act of 1947; or (b) employees of a third-party staffing agency.

Furthermore, Defendant claims that Plaintiff was actually overcompensated during his

---

[1] Plaintiff initially alleged that he worked for Defendant between June 2014 and November 2017.  (ECF DKT #1, ¶ 14).  In its Counterclaim, Defendant alleges that Plaintiff worked for Defendant from April 11, 2017 until November 9, 2017.  (ECF DKT #9, ¶ 6).  Plaintiff admitted this allegation in his Answer to Defendant's Counterclaim.  (ECF DKT #16, ¶ 6).  Yet in his Declaration, Plaintiff asserts under penalty of perjury that he worked for Defendant from June 2014 to November 2017.  (ECF DKT #13-2, ¶ 1).  For purposes of this Order, the Court will assume that the later admission, the Answer to Defendant's Counterclaim, is accurate.

employment. Defendant cites one example where Plaintiff was at the Painesville location for a total of 9 hours, 44 minutes. But Plaintiff certified, and Defendant paid him for, 10.0 hours worked. As a result of this overpayment, Defendant argues there can be no FLSA violation.

On March 1, 2018, Plaintiff asked this Court to certify and issue court-supervised notice to the following class:

> "All former and current maunfacturing employees of The Lubrizol Corporation between January 2, 2015 and the present."

## LAW AND ANALYSIS

### I. Standard of Review for Collective Action

An employee may bring an action on behalf of himself and other "similarly situated" employees pursuant to 29 U.S.C. § 216(b). Unlike typical class actions, each employee wishing to join the collective action must affirmatively "opt-in" by filing written consent. 29 U.S.C. § 216(b). District courts have discretion to facilitate notice to potential plaintiffs. *Hoffman-La Roche, Inc. V. Sperling*, 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). Before facilitating notice, courts must determine whether the potential class members are similarly situated under Section 216(b) of the FLSA.

The Sixth Circuit expressed approval for the two-phase test developed by the district courts in the Sixth Circuit. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 547 (6th Cir. 2006). The first phase takes place at the beginning of discovery when the court has minimal evidence. *Id.* at 546. In the first phase, courts may grant conditional class certification upon a modest factual showing sufficient to demonstrate that the putative class members were the victims of a single decision, policy or plan. *Id.* at 547; *Goldman v. RadioShack Corp.*, No. 03-0032, 2003 U.S. Dist. LEXIS 7611, at *20 (E.D.Pa. Apr. 16, 2003). Plaintiffs must show that their "position

is similar, not identical, to the positions held by the putative class members." *Comer*, 454 F.3d at 546-47.  Plaintiffs must only establish some "factual nexus" between the plaintiffs and the potential class members.  *Harrison v. McDonald's Corp.*, 411 F.Supp.2d 862, 868 (S.D. Ohio 2005) (citing *Jackson v. New York Tel. Co.*, 163 F.R.D. 429, 432 (S.D.N.Y. 1995)).

The second phase occurs once "all of the opt-in forms have been received and discovery has concluded."  *Comer*, 454 F.3d at 546.  During the second phase, courts have discretion to make a more thorough finding regarding the "similarly situated" requirement.  *Id.* at 547.  "If the claimants are similarly situated, the district court allows the representative action to proceed to trial.  If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice."  *Douglas v. GE Energy Reuter Stokes*, No.07-077, 2007 U.S. Dist. LEXIS 32449, at *14 (N.D. Ohio Apr. 30, 2007) (quoting *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001)).

## II.     Plaintiff's Putative Class is Similarly Situated

Having considered the arguments and evidence submitted by the Parties, the Court finds that, at this stage of the proceedings, Plaintiff has met his "slight" burden and is entitled to conditional certification.

Plaintiff submitted ten Declarations, including his own and nine other employees of Defendant.  (ECF DKT #13-2, 13-3).  The Declarations include individuals who worked at Defendant's various plants throughout the United States and included many individuals that were employed in various manufacturing positions.  *Id.*

Based on the Complaint and the ten Declarations, Plaintiff alleges a single FLSA-violating policy: Defendant does not pay for the time its manufacturing employees spend

-4-

changing into and out of protective equipment, walking to and from their assigned work areas, and for time spent to gather the necessary equipment for their shifts. Rather, Defendant only pays employees for their scheduled work shift. All of the uncompensated time is spent either before or after their scheduled work shift. Finally, if Defendant included this time in hourly calculations, Plaintiff and others would work over 40 hours a week.

### A. Sufficiency of the Declarations

Defendant attacks the ten Declarations, arguing that each is self-serving, and it takes issue with the terminology each employee uses. While the Declarations are short and similar to one another, the Court does not make credibility determinations at the conditional certification stage. *McNelley v. ALDI, Inc.*, 2009 WL 7630236 (N.D. Ohio Nov. 17, 2009). Rather, each of the ten Declarants swears under penalty of perjury that the statements are true and based on their personal knowledge. *See id.* Accordingly, the Court presumes the Declarations to be accurate.

Defendant also argues that Plaintiff's "observations" are not enough to support conditional certification in this case. Rather, it appears Defendant would have liked Plaintiff to allege that "others told Plaintiff" of FLSA violations. This argument is unfounded. At least five different individuals at the Painesville location corroborated Plaintiff's allegations of non-payment for certain pre- and post-shift activities. While there is no evidentiary threshold that a plaintiff must reach before a court will grant conditional certification, courts have found that even one declaration alleging FLSA violations is enough to support conditional certification. *See, e.g., Leon v. Diversified Concrete LLC*, 2016 WL 2825073, at * 4-5 (E.D. La. May 13, 2016).

### B. Employee Title is Irrelevant

Defendant believes that any proposed class should be limited solely to material handlers employed in the Painesville location.  Defendant cites the differences between material handlers and operators and alleges that operators receive a paid lunch while material handlers do not.  This difference, Defendant claims, demonstrates that material handlers are not similarly situated to operators.

The Sixth Circuit has held, when deciding whether job titles played a significant role, that "Defendants note that some of the plaintiffs were managers and therefore could not be 'similarly situated.'  This is not a compelling argument because managers could also have been cheated by defendants."  *O'Brien v. Ed Donnelly Enterprises, Inc.*, 575 F.3d 567, 586 (6th Dist. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, ___ U.S. ___, 136 S.Ct. 663, 193 L.Ed.2d 571 (2016).  Rather, plaintiffs are similarly situated "when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs."  *Id.* at 585.

Here, Plaintiff has demonstrated a single policy of non-payment for all compensable time with the supporting Declarations, including at least eight manufacturing individuals other than material handlers.  These various individuals allege Defendant does not pay them for work performed before and after their respective shifts.  Regardless if they receive a paid lunch, Plaintiff and the potential plaintiffs have demonstrated a single FLSA-violating policy.  Any individual defense that Defendant may raise against operators is more appropriately suited for the second stage of the inquiry.  Thus, the Court will allow the putative class to encompass all manufacturing employees.

    **C.**    **Nationwide Class**

Defendant wishes to limit the putative class solely to individuals at the Painesville location.  Defendant argues that Plaintiff's Declaration is not enough to establish that he is similarly situated to employees located outside of the Painesville facility.  Furthermore, when viewed individually, the other Declarations do not support a nationwide class.

Despite Defendant's argument to the contrary, the Court reviews the evidence submitted in whole.  Plaintiff submitted five Declarations from employees who worked at facilities outside of Painesville, Ohio.  Each of those five Declarations reflects a policy of non-payment for work performed before and after the scheduled shift time across all facilities.

Furthermore, the case law that Defendant cites, *Snide v. Discount Drug Mart, Inc.*, 2011 WL 5434016 (N.D. Ohio Oct. 7, 2011); *Simpson v. Caresouth HHA Holdings, LLC*, 2016 WL 3349637 (M.D. Tenn. June 16, 2016); and *Gordon v. Maxim Healthcare Services, Inc.*, 2014 WL 7008469 (E.D. Pa. Dec. 11, 2014), is distinguishable.  In each of these cases, the court limits the class to either one facility or one state.  *Snide*, at *5 (limited to the location where plaintiff worked); *Simpson*, at *5 (limited to facilities in state of Tennessee); *Gordon*, at *4 (limited to Pennsylvania).  But not one of these cases included a declaration or other evidence from outside the limited location.  *Snide*, at *1 (declarations from three employees who worked at same location); *Simpson*, at *1 (declarations from three employees who worked at facilities in Tennessee); *Gordon*, at *3 (declarations from two employees both located in Pennsylvania).

Unlike these cases, Plaintiff and the potential plaintiffs have provided evidence that covers multiple facilities of Defendant across multiple states.  There is simply more evidence before this Court of a nationwide policy than there was before the courts in *Snide*, *Simpson* and *Gordon*.  The Court finds this persuasive and will allow the class to encompass all of

Defendant's U.S. facilities.

Furthermore, the evidence that Defendant cites does not refute Plaintiff's position. Defendant includes two affidavits from its human resource department. Each sets forth averments that go to the merits of the case. For example, Mr. Mahler's Affidavit discusses the time reporting practices at the Painesville location and the differences between material handlers and operators. Mr. Reed's Affidavit demonstrates that each of Defendant's facilities utilizes different time reporting systems and that Defendant employs some union members. Neither Affidavit, however, directly refutes Plaintiff's position - that Defendant does not pay its employees for all work performed, including work performed before and after work shifts. *Compare Rodgers v. CVS Pharmacy, Inc.*, 2006 WL 752831, at *4 (M.D. Fla. March 23, 2006) (denying conditional certification when defendant provided 31 affidavits of plaintiff's coworkers who directly contradicted plaintiff's overtime claims).

### D.     Type of Employee

Finally, Defendant argues that Plaintiff's proposed class is over expansive because it includes union members, non-employees and foreign employees. At the outset, it is inappropriate for the court at the notice stage to resolve factual disputes or determine the merits of the claims or defenses. "At the notice stage, district courts within the Sixth Circuit typically do not consider the merits of the plaintiff's claims, resolve factual disputes, make credibility determinations, or decide substantive issues." *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (S.D. Ohio 2011). This also includes arguments on possible exemptions under the FLSA. *Heibel v. U.S. Bank Nat'l Assoc.*, 2012 WL 4463771, *5 (S.D. Ohio Sept. 27, 2012).

Here, Defendant has made numerous objections to Plaintiff's case based on the merits.

In fact, Defendant agrees that its arguments based on the merits are inappropriate at this stage. These arguments include factual disputes over Plaintiff's payment history; different time-recording mechanisms across facilities; exemption arguments based under 29 C.F.R. § 516.2(c); that Defendant is not liable for the failures of its employees to record their time properly; and credibility issues with the Declarations.  These issues are more appropriately addressed in the context of a motion to decertify.  Although the points Defendant makes may have some appeal, the burden at the pre-discovery conditional stage is slight.  *Houston v. Progressive Casualty Insurance Co.*, 2015 WL 8527339 (N.D. Ohio Dec. 11, 2015).

Defendant worries about the breadth of the potential class and its inclusion of union members, non-employees and foreign employees.  With respect to union members, Defendant argues that any FLSA violations suffered by union members are governed by the Collective Bargaining Agreement ("CBA") and the Labor Management Relations Act ("LMRA").  Despite this bare assertion, the Court cannot determine the issue without first reviewing the CBA.  The FLSA and LMRA are not mutually exclusive.  *See, e.g., Snyder v. Dietz & Watson, Inc.*, 837 F.Supp,2d 428, 450 (D.N.J. 2011) ("[t]he FLSA confers upon Plaintiff statutory rights that are independent of the CBA"); *Gordon v. Kaleida Health*, 2008 WL 5114217, at *7 (W.D.N.Y. Nov. 25, 2008) ("Employees' right to minimum wage and overtime pay under the FLSA are separate and distinct from employees' contractual rights arising out of an applicable collective bargainning agreement.").  Section 3(o) of the FLSA provides an exception for changing into cloths at the beginning and end of each day if it is excluded by "the express terms of or by custom or practice under a bona fide collective bargaining agreement."  29 U.S.C.A. § 203(o) (West 2018).  Moreover, Defendant's principal authority instructs that "claims that rest on the

-9-

interpretations of the underlying collective bargaining agreement must be resolved pursuant to the procedures contemplated under the LMRA." *Vadino v. A. Valey Eng'rs*, 903 F.2d 253, 266 (3d Cir. 1990).

Here, Plaintiff alleges a nationwide policy of non-payment for work-related activities performed before and after their scheduled shifts. At least one union member agrees and says that the policy applies equally to union members. Since the Court does not have the alleged CBA before it, it cannot determine whether the underlying CBA governs the claims of the potential union members. Until then, Plaintiff may include union members in the putative class.

With respect to non-employees, Defendant argues that certain individuals who submitted declarations in this matter are not employees of Defendant. Rather, Vector Technical, Inc. ("Vector"), a third-party staffing agency, hired and paid these individuals. According to Defendant, if Vector improperly paid these individuals, that issue is with Vector, not Defendant.

Defendant's argument, however, overlooks the fact that the FLSA's definition of "employee" is strikingly broad and "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principals." *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 804 (6th Cir. 2015). "A single individual may stand in relation of an employee to two or more employers at the same time under the [FLSA] since there is nothing in the act which prevents an individual employed by one employer from also entering into an employment relationship with a different employer." 29 C.F.R. § 791.2(a) (2018).

The allegation that Vector actually employs employees who work for Defendant is not dispositive *per se*. Rather, it is a fact-intensive inquiry to determine whether these "non-

-10-

employees" can hold Defendant liable. At this first stage of conditional certification, however, it is not the Court's obligation to go into the merits of the position. Again, Plaintiff has alleged a single FLSA-violating policy and the "non-employees" allege they are subject to the same. For this reason, they are similarly situated.

Finally, Defendant worries that the prospective class includes foreign employees. This argument is moot as Plaintiff concedes that the proposed putative class relates only to employees employed at facilities within the United States. (ECF DKT #19, pg. 2-3).

## CONCLUSION

The Court grants Plaintiff's Motion for Conditional Class Certification of the FLSA claim. The Class is defined as follows:

> All current and former manufacturing employees, including union members, as well as individuals employed by third-party staffing agencies, who worked at locations within the United States between January 2, 2015 and the present.

If discovery shows that claimants are not similarly situated, the Court will decertify the class and dismiss the opt-in plaintiffs without prejudice.

By November 30, 2018, Defendant shall provide Plaintiff with the following:

1. The name, last known home address (including zip code), last known telephone number, last known email address, employment dates, employee's position, and employment status (union, "non-employee" etc.) of all current and former manufacturing employees between January 2, 2015 and the present.

2. The applicable CBA to determine whether it governs the alleged FLSA- violations.

By November 30, 2018, the Parties shall submit to the Court proposed language for notification and consent forms to be issued via First-Class Mail. In drafting the proposed

notification language, the parties should be "scrupulous to respect judicial neutrality" and "take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 174, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989).

The Court will issue a follow up Order to schedule a status conference call to discuss initial discovery and the applicability of the CBA.

**IT IS SO ORDERED.**

s/ Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**United States District Judge**

**Dated:  October 25, 2018**